## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ENRIQUE ACOSTA,                                                    )
                                                                   )
           Plaintiff,                              )
                                                                   )
       v.                                              )      Civil No. 09-cv-01300 (RMU)
                                                                   )
MICHAEL G. NELSON, and                                             )
BETSY HERNANDEZ-RICOFF,                                            )
                                                                   )
          Defendants.                             )
_____)

## DEFENDANTS' MOTION TO DISMISS, OR IN THE
## ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants Dr. Michael G. Nelson and Dr. Betsy Hernandez-Ricoff ("Defendants"),

employees of the Federal Bureau of Prisons, by and through undersigned counsel, hereby

respectfully move the Court to dismiss Plaintiff Enrique Acosta's ("Plaintiff") complaint.  In the

alternative, Defendants respectfully request that the Court grant summary judgment in favor of

Defendants.  For the reasons outlined more particularly in Defendants' accompanying

Memorandum of Points and Authorities, the complaint should be dismissed.  Plaintiff should

take notice that any factual assertions contained in the documents attached to this Motion may be

accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary

evidence contradicting the assertions in such documents.  *See Neal v. Kelly*, 963 F.2d 453, 456-

57 (D.C. Cir. 1992); LCvR 7(h); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment

is properly made and supported, an opposing party may not rely merely on allegations or denials

in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule

-- set out specific facts showing a genuine issue for trial.  If the opposing party does not so

respond, summary judgment should, if appropriate, be entered against that party."); *see also Fox*

*v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988).  A proposed order consistent with this motion is

attached hereto.

Respectfully submitted,

_____
CHANNING D. PHILLIPS, D.C. Bar # 415793
United States Attorney

   /s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

   /s/
_____
WYNNE P. KELLY
Assistant United States Attorney
United States Attorney for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Tel: 202-305-7107
wynne.kelly@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| | ) |
| ENRIQUE ACOSTA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )        Civil No. 09-cv-01300 (RMU) |
| | ) |
| MICHAEL G. NELSON, and | ) |
| BETSY HERNANDEZ-RICOFF, | ) |
| | ) |
| Defendants. | ) |
_____)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff Enrique Acosta ("Plaintiff" or "Acosta"), a star pitcher on his prison softball team, cannot demonstrate that the medical evaluations reviewed by Defendants Dr. Michael G. Nelson ("Dr. Nelson") and Dr. Betsy Hernandez-Ricoff ("Dr. Hernandez-Ricoff," together with Dr. Nelson, "Defendants"), doctors for the Federal Bureau of Prisons ("BOP") sued in their individual capacities, violated his constitutional rights.  Plaintiff's elbow injury, incurred in an automobile accident in 1983, has been treated appropriately by BOP throughout Plaintiff's period of incarceration.  Plaintiff's Complaint should be dismissed or judgment granted in favor of Defendants.

**I.  SUMMARY OF FACTS**

On February 1, 1993, a federal grand jury in the Southern District of Florida returned an eight-count superseding indictment charging Plaintiff and co-defendant Milciades Jimenez ("Jimenez") with conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1)& 846 (Count I); possession with intent to distribute cocaine, in violation of

and 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II); using and carrying a firearm equipped with a firearm silencer or firearm muffler during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. §§2 and 924(c)(1) (Count III); possession of an unregistered firearm, a silencer, in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2 (Count IV); possession of a firearm not identified by a serial number, in violation of 26 U.S.C. §§ 5842, 5861(i) (Count V); two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts VI and VII); and use of a communication facility in committing a felony, conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 843(b) (Count VIII). *See* Govt. Br. *in United States v. Enrique Acosta*, No. 00-16691, 2001 WL 34141906, at *1-*2 (11th Cir. Mar. 20, 2001), *judgment aff'd by* 254 F.3d 1085 (11th Cir. 2001) (Table) (unpublished). Acosta was charged in Counts I-VI, and Jimenez was charged in Counts I-V and VII-VIII. *Id.* at *2. Acosta entered not guilty pleas to the charges against him and proceeded to a jury trial with Jimenez on August 11, 1993. *Id.* The jury found Acosta and Jimenez guilty of all charges on August 13, 1993. *Id.* The district court sentenced Acosta to concurrent sentences of 262 months imprisonment on Counts I, II, IV, V, and VI, and to a 360 month sentence on Count III which is to run consecutive to Counts I, II, and IV-VI. *Id.* at *3. The court entered the judgment on December 14, 2000. *Id.* The Eleventh Circuit affirmed without opinion on May 7, 2001. 254 F.3d 1085 (Table).

Plaintiff has been in custody since January 8, 1993. He served at least three years of incarceration at FCI Marianna, where he was from April 6, 2005, until this year. (*See* SMF ¶ 2.) Plaintiff's projected release date via good conduct time is January 27, 2038. (*Id.*) Plaintiff was seen at FCI Marianna in the Chronic Care Clinics every three to six months. (*See id.* ¶ 3.) Plaintiff has received the appropriate standard of medical care since he arrived at FCI Marianna.

(*Id.*)  When Plaintiff arrived at the institution he had a diagnosis of right elbow ankylosis, high blood pressure and high cholesterol.  (*Id.*)  Before he was transferred to FCI Marianna, Plaintiff was evaluated by an orthopedist at FCI Jesup in Georgia on March 9, 2005.  (*See id.* ¶ 5.)  The orthopedic surgeon at FCI Jesup, in consultation with the FCI primary care physician, found that Plaintiff had a defective elbow that has been present for "many years" and recommended consideration be given to surgery at Rochester FCI, the BOP Medical Center, to correct the deformation in the elbow.  (*Id.* ¶ 5.)  Such surgery required a transfer to that institution.  (*See id.*)  On June 15, 2005, the orthopedic consultation request was denied by the Regional Utilization Review Committee.  (*See id.* ¶ 7.)  Plaintiff did not appeal that determination in a timely manner, but rather, only sought administrative review later.  (*See id.* ¶¶ 4-7.)

Throughout this time period Plaintiff continued to play competitive softball (including serving as his team's pitcher), using the injured elbow, without interruption over the recommendations of his doctors.  For example, while at Jesup FCI, Plaintiff was seen on February 22, 2004, because of an injury which occurred to Plaintiff's right-hand middle finger during a softball game.  (*See id.* ¶ 4.)  On April 21, 2006, Plaintiff was seen by the FCI Marianna medical staff complaining that he had been injured while sliding into third base during the course of a regularly scheduled softball game.  (*Id.* ¶ 9.)  The examination revealed abrasions on both knees, on the top of his head, and on his left-hand little finger.  (*Id.*)  During that examination, Plaintiff's deformed elbow was inspected.  (*Id.*)  Thereafter, on June 10, 2006, Plaintiff was again seen by the Marianna medical staff after his knee was hit by a softball during the course of a regularly scheduled softball game.  (*Id.* ¶ 10.)

Two months after that softball injury, on August 10, 2006, while the referral was still being considered in Washington, D.C., Plaintiff filed his first formal administrative remedy

requesting surgery at the institutional level.  This request was denied on August 24, 2006.  On

September 15, 2006, while the additional information was requested by the Central Office in

Washington, D.C., was being collected, Plaintiff filed his second formal administrative remedy

requesting surgery at the regional level.  This was denied on October 11, 2006.

Plaintiff filed his third formal administrative remedy requesting surgery at the national

level on November 9, 2006.  On January 10, 2007, this was also denied.  Dr. Nelson was the

Chief of Health Programs in the Health Services Division, BOP, Washington, D.C. during the

period between September 1999 through June 2006, when the initial request was received.  (*See

id.* ¶ 13.)  In that capacity, Dr. Nelson initially reviewed and denied the medical referral request

from FCI Marianna seeking the transfer of Plaintiff to a medical referral center.  (*Id.*)  Dr.

Hernandez-Ricoff was the acting Chief of Health Programs in the Health Services Division,

BOP, Washington, D.C. during September 2006.  (*See id.* ¶¶ 15-16.)  In that capacity, Dr.

Hernandez-Ricoff denied the resubmitted request.  (*Id.*)

In this case, Plaintiff alleges that the Central Office Medical Designator, BOP, violated

his constitutional rights by being deliberately indifferent to his medical needs.  He alleges that

his denial of his request for surgery to repair his elbow amounts to cruel and unusual punishment

and seeks relief pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,

403 U.S. 388 (1971), its progeny, and the Eighth Amendment.  Plaintiff alleges his Eighth

Amendment constitutional right to medical treatment was violated when he was denied surgery

and post surgical rehabilitation for the progressive deformation of his right elbow resulting from

an injury he sustained to his right arm in 1983.  (*See* Compl., Section V.)  He seeks an order

requiring the BOP to provide him with surgery.  Plaintiff is seeking "elective surgery" at

government expense; surgery that is neither medically necessary to correct a life-threatening nor a life-affecting problem.  (*See* SMF ¶¶ 21-26.)

## II.  <u>STANDARDS OF REVIEW</u>

### A.  Legal Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

In order to survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, (2007).  As with facial challenges to subject-matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6).  *Trudeau v. FTC,* 456 F.3d 178, 193 (D.C. Cir. 2006).  As a general matter, the Court is not to consider matters outside the pleadings, per Rule 12(d), without converting defendant's motion to a motion for summary judgment.

In interpreting the scope of this limitation, however, the D.C. Circuit has instructed that the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice."  *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997).  For example, the D.C. Circuit recently held that court papers filed elsewhere by the plaintiff may be relied upon by the Court in deciding a motion to dismiss.  *See Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (citing *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1222-23 (D.C. Cir. 1993); *see also Covad Commun. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (judicial notice of other court decisions and party's failure to respond to argument regarding them).

**B.  Legal Standard for a Motion for Summary Judgment**

A motion for summary judgment should be granted when "the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "material" if it might affect the

outcome of the case under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242

(1986).  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for

the non-moving party.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 ,

586 (1986).

On a summary judgment motion, the record and all inferences that can be drawn from it

must be viewed in the light most favorable to the non-moving party.  *United States v. Diebold,*

*Inc.*, 369 U.S. 654, 655(1962). "Summary judgment is appropriate when the pleadings and the

evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'"  *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148,

154 (D.D.C. 2007) (Bates, J.) (quoting Fed. R. Civ. P. 56(c).  The party moving for summary

judgment bears the initial responsibility of showing an absence of a genuine issue of material

facts.  *Id.*  In deciding whether a genuine issue of material facts exists, the court must "accept all

evidence and make all inferences in the non-movant's favor."  *Id.* (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "A non-moving party, however, must establish more than

the mere existence of a scintilla of evidence in support of its position."  *Id.* (citations and internal

quotation marks omitted).  That is, "'[i]f the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted.'"  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, "[s]elf-se

F. Supp. 2d 37, 42 (D.D.C. 2008) (Walton, J.) ("The non-moving party [ ] cannot rely on mere

allegations or denials[.]") (internal quotations omitted); *Schoenman v. FBI*, 573 F. Supp. 2d 119,

147 (D.D.C. 2008) (Kollar-Kotelly, J.) ("In support of his claim, Plaintiff offers only his own

self-serving declaration, which is insufficient to create a genuine issue of material fact[.]");

*Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) (Friedman, J.) ("Summary

judgment for a defendant is most likely when a plaintiff's claim is supported solely by the

plaintiff's own self-serving, conclusory statements.").  Indeed, "'conclusory allegations' and

'unsubstantiated speculation' do not create genuine issues of material fact."  *Bonieskie*, 540 F.

Supp. 2d at 195 (citations omitted).


## III.  ARGUMENT

### A.  Defendants Are Entitled to Qualified Immunity

Plaintiff's Complaint seeks relief against Defendants who are federal employees pursuant

to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

"[G]overnment officials performing discretionary functions generally are shielded from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).  In deciding "whether a right was 'clearly established,' '[t]he contours

of the right must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right.'" *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 689

(D.C. Cir. 2009).  Once protected by qualified immunity, an official enjoys "immunity from suit

rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"[Q]ualified immunity is a question of law which the court should decide 'at the earliest

possible stage in litigation,'"  *Frazier v. Williams*, Civ. A. No. 06-615, 2009 WL 1528766, at *3

(D.D.C. June 2, 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)), thereby "ensuring fidelity to the purposes of immunity by sparing defendants the 'unwarranted demands' of suit and discovery as well as unwarranted liability." *Maye v. Reno*, 231 F. Supp. 2d 332, 336 (D.D.C. 2002). When making its determination, the Court may ask whether, "taken in the light most favorable to the party asserting the injury, [do] the facts alleged show the officer's conduct violated a constitutional right?" *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006) (quoting *Saucier*, 533 U.S. at 201).

As the Supreme Court recently held, however, this Court may find Defendants entitled to qualified immunity and dismiss Plaintiff's complaint without determining whether a constitutional right was violated, but merely whether the allegedly violated right was clearly established. *Pearson v. Callahan*, 129 S.Ct. 808, 820-22 (2009). Exercising this option allows the Court "to decide only the more narrow 'clearly established' issue 'in light of the circumstances of the particular case at hand.'" *Rasul v. Myers*, 563 F.3d 527, 530 (D.C. Cir. 2009) (quoting *Pearson*, 129 S. Ct. at 818).

Here, Defendants are entitled to qualified immunity as Plaintiff has not established that Defendants, in deciding not to approve unnecessary elective surgery and continue the current medical treatment afforded Plaintiff, were so deficient that their actions constitute deliberate indifference to Plaintiff's medical needs. *See Farmer v. Moritsugu*, 163 F.3d 610, 614 (D.C. Cir. 1998). In *Farmer*, the D.C. Circuit analyzed the deliberate indifference claim of a plaintiff who sought medical treatment for transsexualism while incarcerated. The plaintiff, frustrated with her lack of treatment, attempted self-castration. *Id.* at 611. After writing several letters to the BOP Medical Director asking for treatment, the Medical Director responded that, pursuant to BOP's medical policy, the plaintiff had not demonstrated that the hormones, castration, and specific

psychotherapy he sought were clinically necessary and therefore no additional treatment was warranted.  *Id.*  The district court held that the BOP Medical Director was not entitled to qualified immunity as the letter "'sanction[ed] the withholding of any treatment from [the plaintiff]'" and that could constitute deliberate indifference.  *Id.* at 612 (quoting *Farmer v. Hawk*, 991 F. Supp. 19, 28 (D.D.C. 1998)).  The D.C. Circuit, however, reversed the district court and held that, as the Medical Director had followed BOP policy and was not the actual treating physician, he was entitled to qualified immunity from the plaintiff's deliberate indifference *Bivens* claim.  *Id.* at 616 ("We add, as a final note, that exposing [the medical director] to personal liability in these circumstances would be totally at odds with the policies underlying the doctrine of qualified immunity. . . If [the medical director] is liable in a case such as this, he is, in effect, liable for all alleged mistakes in the individual diagnoses of every inmate in the BOP system, simply by virtue of an inmate's complaint.  Such an outcome is untenable.").

Here, Plaintiff's claims fall far short of the plaintiff's in *Farmer*.  Plaintiff, who has lived with his elbow injury for twenty-five (25) years, has received more than sufficient medical treatment.  Further, his injury has not hampered his prison softball career.  Plaintiff cannot demonstrate that his procedure is medically necessary or that either of the Defendants were deliberately indifferent to his medical needs.  In fact, each time Plaintiff requested medical assistance he was examined and treated by BOP medical staff, whether at FCI Jesup, FCI Marianna or elsewhere.  Plaintiff simply disagrees with the medical decisions made by Defendants.  A difference of opinion between an inmate and the prison medical staff regarding medical matters, however, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and courts have consistently held that the propriety of a certain course of medical treatment is not a proper

subject for review in a civil rights action. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)

(reversing appellate court and dismissing civil rights claim against prison doctor who was also

medical director of corrections department where doctor failed to conduct x-ray of lower back

and other diagnostic tests after a bale of cotton fell on plaintiff).

     **B.**        **Plaintiff Cannot Sustain a Claim Against Defendants**

     Even if the Court were to find that Defendants are not entitled to qualified immunity,

Plaintiff cannot state a *Bivens* claim against Defendants as a matter of law.  Under *Bivens*, to

establish an actionable violation of the Eighth Amendment for inadequate medical care, Plaintiff

must show 1) a substantial risk of serious harm, 2) deliberate indifference to that risk by the

Defendants, and 3) causation.  *See Farmer v. Brennan*, 511 U.S. 825, 827 (1994).  Plaintiff's

complaint fails in all respects.

     To qualify as a substantial risk of serious harm, the medical need and its deprivation must

be sufficiently serious.  A serious medical need is "one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention."  *See, e.g.*, *Hill v. DeKalb Regional Youth Detention Center*,

40 F.3d 1176, 1187 (11th Cir. 1994) (quotation omitted).  If the plaintiff fails to prove a serious

medical need he fails to state a claim.  *Estelle*, 429 U.S. at 104.  The seriousness of the

deprivation is measured by the detrimental effect that the deprivation brought upon the person.

*Id.* at 1188-1189.

     Plaintiff has failed to establish this first prong of the analysis because he has presented no

evidence that his medical care placed him at a substantial risk of serious harm at any point during

his incarceration.  In fact, the medical condition of which Plaintiff complains has not worsened

in any degree and does not interfere with Plaintiff's lifestyle, particularly his softball play.  *See*

SMF, ¶ 1, 4, 8, 10, 14.  Plaintiff alleges in his claim that he was diagnosed by a physician as mandating treatment.  However, he has failed to provide evidence to support his allegation. Plaintiff misstates the opinion of one of his treating physicians.  Contrary to Plaintiff's assertions, when an orthopedic surgeon examined his elbow on March 9, 2005, the surgeon did not find that surgery would correct the elbow, but found only that his condition may be improved by surgery.  SMF ¶ 6.  However, the record does not reveal that surgery was mandated by this or any other physician.

Medical care to BOP inmates, by policy, is designed to provide such care as is necessary to allow inmates to perform daily living function and activities within the correctional environment.  *See* SMF ¶ 26.  A determination of whether and when to schedule surgery is based upon a classification of the nature of the inmate's medical needs.  *See* SMF ¶¶ 22-24.  In the instant case, Plaintiff's needs were classified as "Medically acceptable- not always necessary." *See* SMF ¶¶ 13, 23.  In essence, this classification is one of elective surgery.  When faced with an elective medical procedure, BOP medical personnel are obligated to balance the inmate's perceived needs against public safety concerns, fiscal concerns, and the potential for improvement in the inmate's quality of care.  *See* SMF ¶ 24.  Here, the records that Doctors Nelson and Hernandez-Ricoff reviewed did not demonstrate that the surgery being requested was necessary as the Plaintiff did not appear to be hampered by his elbow.  *See* SMF ¶¶ 13-15. Plaintiff fails to present any evidence that the condition from which he suffers requires more extensive treatment than he has received while incarcerated at FCI Marianna.

Plaintiff's elbow injury can be treated either conservatively by medication and care or by elective surgery.  *See* SMF ¶¶ 2, 13, 14, 15.  The fact that Plaintiff wants elective surgery does not put the Plaintiff at medical risk, nor does the fact that the two doctors followed that policy in

making their decisions establish a constitutional tort.  BOP policy limits the use of elective surgery to resolve a condition that can be treated more conservatively.  *See* SMF, ¶ 21-26.  Thus, Plaintiff cannot sustain a claim against the Defendants and his complaint should be dismissed or, in the alternative, judgment should be entered in favor of Defendants.

### C.        The Court Lacks Personal Jurisdiction Over Defendants

This Court does not have personal jurisdiction over Defendants, sued in their individual capacities, without proper service.  It is well established that, in an action against a federal employee in his or her individual capacity, the defendants must be served with process in accordance with rules applicable to individual defendants.  *Simpkins v. Dist. of Colum. Govt.*, 108 F.3d 366, 368-70 (D.C. Cir. 1997); *Delgado v. Bureau of Prisons*, 727 F. Supp. 24 (D.D.C. 1989).  Rule 4(i)(3) states, "To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)."  Thus, Defendants must be personally served pursuant to Rule 4(e) of the Federal Rules of Civil Procedure for this Court to exercise personal jurisdiction over her.  Plaintiff has failed to perfect service on either Dr. Nelson or Dr. Hernandez-Ricoff, sued in their individual capacities.  In fact, summonses were never even issued for Dr. Nelson or Dr. Hernandez-Ricoff, but instead a summons was issued to the Central Office Medical Designator only.  (*See* Order of Sept. 28, 2008 [DE #56] in this case prior to transfer to this Court, *Acosta v. Middlebrooks et al.*, 5:07-cv-00082-MCR-MD (N.D. Fla.).)  Thus, this Court lacks personal jurisdiction over Defendants and Plaintiff's claims against them should be dismissed.

CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss

Plaintiff's complaint or, in the alternative, grant summary judgment in favor of Defendants.


Respectfully submitted,

_____
CHANNING D. PHILLIPS, D.C. Bar # 415793
United States Attorney

  /s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

  /s/
_____
WYNNE P. KELLY
Assistant United States Attorney
United States Attorney for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Tel: 202-305-7107
wynne.kelly@usdoj.gov

13

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 8th day of January, 2010, a true and correct copy of

the foregoing Motion to Dismiss or, in the Alternative, for Summary Judgment, Statement of

Material Facts, and a draft order were served upon plaintiff by first class United States mail,

marked for delivery to:

      ENRIQUE ACOSTA
      R 46437-004
      FCI COLEMAN MEDIUM
      FEDERAL CORRECTIONAL INSTITUTION
      P.O. BOX 1032
      COLEMAN, FL  33521

                                   /s/
                                   WYNNE P. KELLY
                                   Assistant U.S. Attorney